## McCune v. Northern Pac. Ry. Co.

*(Circuit Court, D. Oregon.   January 9, 1884.)*

DEFENSE OR QUESTION NOT MADE TO JURY.
> Where a party has a defense to an action arising out of the testimony in the case, and omits to present it to the jury, but relies upon a defense involving a different, if not inconsistent, conclusion from the testimony, a new trial will not be granted to enable him to submit the case to another jury upon this untried question, unless it clearly appears from the evidence that he is entitled to a verdict on that ground, and then only upon the payment of the costs of the first trial.

Action for Injury to the Person.   Motion for a new trial.
*William H. Effinger* and *Arthur C. Emmons,* for plaintiff.
*Rufus Mallory,* for defendant.

DEADY, J.   The plaintiff, a citizen of Indiana, brought this action against the defendant, a corporation formed under a law of the United States, to recover $10,000 damages for an injury to his person occasioned by a fall from an unfinished bridge on which he was at work for the defendant, which fall was caused by the negligence of the defendant in providing the scaffolding whereon the plaintiff, in the course of his employment, was required to work, and without any negligence on the part of the plaintiff.   The answer of the defendant contains a denial of any negligence in the premises, on its part, and a plea or defense that the injury complained of was caused by the negligence of the plaintiff.   The cause was tried with a jury on November 15th and 16th, and there was a verdict for the plaintiff for $2,500.   And now the defendant moves the court for a new trial on the ground (1) that the evidence is insufficient to justify the verdict; and (2) for errors of law occurring at the trial.

On the argument of the motion the second ground was not pressed, and the only point relied on is that the verdict should have been for the defendant because the testimony did not warrant the conclusion that the injury to the plaintiff was caused by the negligence of the defendant, but that, upon the whole evidence, the reasonable conclusion is that the injury, if not caused by the plaintiff's carelessness, was the result of accident for which no one is to blame.   The evidence given on the trial goes to show that the plaintiff was injured while working on the defendant's bridge at the second crossing of Clarke's Fork of the Columbia river, in Missoula county, Montana, on March 2, 1883; that he had been in the employ of the defendant for nearly three years prior thereto,—most of the time with the engineers,—and about half a month on the bridge, during which period he had, by overwork, put in 19 days' labor; and that two bents of the bridge of two stories each, of about 20 feet across and the same distance apart, were then raised on the west bank of the river. When the two lower of these bents were raised, they were kept in

position by means of a gang-plank and three or four pieces of timber, called stay-laths, laid across from bent to bent and spiked down to the caps. This plank was four by sixteen inches in size, and placed somewhat to the left of the middle of the caps, while the stays were laid on either side of the plank and about three feet apart. These stays were poles or green fir trees, from four to six inches in diameter, and had been cut in the woods near by, within two weeks, by the plaintiff and others, under the direction of the foreman of the work. Both they and the plank were intended, primarily, to hold the lower bents in position while the upper ones were being raised and the girders put in place; but they were also necessarily used as scaffolding during these operations, particularly the plank, and none other was furnished. When the plank and stays were spiked upon the lower bents, the top bents were then raised upon them,—the cap of the former serving as the sill of the latter. The top bents consisted of a cap and four posts, each about 12 inches square. When the bents were in position and stayed, two girders were laid across the lower story from cap to cap, next to the outer post, and spiked down as a permanent stay or tie.

On the occasion in question the first girder was being placed on the two bents next to the river. Several men were engaged at the work, including the plaintiff. The girder was put upon a dolly and pushed along from the direction of the bank on the gang-plank until the further end was pretty well across the space between the bents, when it was swung diagonally around and turned over on its edge, the men standing on either side of it on the gang-plank, cap, and stays, as they could or was convenient, then taking hold of it with their cant-hooks and launching it along in the direction required. When the further end of the girder was upon the further cap, and just to the left of the post next to the outside one, the plaintiff, who was on the right of the girder, and the furthest man forward on that side, stepped from the cap around and outside of the inner post onto the end of the stay, which projected beyond the cap some three or four feet, for the purpose of making room for the man immediately behind him, and taking hold of the girder near the end with his hook, and helping put it into place. As he stepped upon it, and before he put his hook to the girder, the stay broke and let him fall onto the stones and frozen ground beneath, a distance of about 20 feet, whereby his left hip was temporarily injured, and his left arm permanently disabled, by the fracture of the *olecranon* or elbow.

The case was tried by the defendant upon the theory that the stays were not sufficient for scaffolding, and were not intended to be so used, and that the defendant was guilty of negligence in stepping upon the stay as he did, which negligence was the cause of his injury. But the weight of the evidence is directly contrary to this theory. Nor is it apparent how the defendant could escape the charge of negligence in the matter of providing sufficient scaffolding whereon

to do this work, unless these stays were fit for the purpose. No proof was offered on either side as to the probable strength of such timbers, but I think it common knowledge, upon which the court and jury may act without further evidence, that a sound fir tree from four to six inches in diameter would support the weight of the plaintiff, (165 pounds,) and much more. The only apparent danger in using these stays as scaffolding arose from their shape, and not their want of strength. Being round, and comparatively small, a person was liable to lose his balance and fall from them; and if any one had been injured by such means, it is not apparent how the defendant could have escaped liability therefor on the ground of not having provided sufficient scaffolding. And, in my judgment, there ought to have been at least three planks thrown across the opening between the bents—one in each space between the posts—before any work was attempted thereon. On his examination in chief, the plaintiff said that after his fall he examined the broken stay at a distance of 20 feet from it, meaning, as I suppose, from the ground where he fell to the top of the bent where it broke, and that it broke nearly square off, and appeared to be a fresh break; but upon re-examination by his counsel, and in answer to a direct question, he said that he looked at it "afterwards," and he thought "it had a crack on top."

It does not appear from the evidence whether this impression, that the stay was cracked on top, was received at the examination when he thought it was a fresh break or "afterwards;" and if so, how long; nor does it appear whether the end of the stay fell to the ground with the plaintiff, as it would if it had been broken square off, or whether it was simply split down, and remained attached to the stay at the bent. The plaintiff appears to have been removed from the locality to a hospital immediately after the injury, and it does not appear that he was ever on the ground again; and supposing, as is probable, that his only examination of the break in the stay was a cursory glance upward, as he lay on the ground, to the top of the bent, where the fracture occurred, I do not think much reliance can be placed on his impression as to whether the break was altogether a fresh one or not. The defendant was in the possession of the stay when it broke, and ought to be able to produce it or account for it, or produce a witness who had examined it carefully, and could testify as to its condition. But it offered no evidence on the subject, nor any excuse for not doing so. The foreman was on the ground at the time of the occurrence, and, in justice to both parties, ought to have looked into the circumstances of the case with a view of ascertaining how the casualty occurred, and who was to blame for it, if any one; and presumably he did so. But although he was called as a witness by the defendant, no question was asked him on the subject.

No question was made on the trial but that Mr. Anderson, the foreman or superintendent of this work, stood in the place of the defendant, and that his negligence, if any, was the negligence of the

defendant; but the same was tacitly conceded, and the court so instructed the jury. The defendant did not ask for any special instruction to the jury, nor take any exceptions to the charge as given them by the court, but was content with the presentation and argument of its case to the jury upon the question of fact, that the stay-laths were not used or intended to be used for scaffolding, and therefore the plaintiff was guilty of negligence in attempting, as he did, to use one of them for that purpose. And in this connection, the court said to the jury:

"This case must turn upon the question, was the negligence in regard to the stay-lath the negligence of the defendant or the plaintiff, or was the injury the result of an accident for which neither party is to blame. If you find that the injury sustained by the plaintiff was caused by the negligence, in this respect, of the defendant, your verdict should be for the plaintiff; but if you find that such injury was caused by the negligence of the plaintiff, or that it was the result of accident, then your verdict should be for the defendant."

On the proposition that the stays were not used or intended to be used as scaffolding, the case, on the evidence, was clearly against the defendant; and a verdict for the plaintiff on that issue ought not to be disturbed by the court. But it appears to me that the question of whether this injury was the result of accident is not so clear. And if the defense had been made to the jury on that ground the verdict might have been different. But in the consideration of the question, weight must be given to the fact that the defendant, with the apparent ability to show the actual condition of the stay at the time of the fall, failed to do so or give any excuse therefor. And then, ought the court to grant a new trial to enable the defendant to submit the case to another jury upon the proposition that the injury was the result of accident, notwithstanding it might have done so on the former trial? It may be, if there was no room for doubt or difference of opinion on this question, that the court ought to grant a new trial upon the condition that the defendant pay the cost of the former one, in which it was fairly cast upon the case as then presented by it. But it does not appear that the case is so clearly one of accident that it would be the duty of the court to instruct the jury to find a verdict for the defendant on that ground. For if possible, it is highly improbable, that a fir pole or tree, at least four inches in diameter, broke off or split down close to the cap of the bent simply with the plaintiff's weight, unless it was originally defective or had since been injured in some way. And in either case, the injury might be the result of accident or the negligence of the plaintiff or defendant. For instance, if the defective condition of the stay could not have been known and provided against by the defendant, by the exercise of ordinary prudence and diligence, the fall of the plaintiff therefrom was so far an accident for which the defendant is not responsible. But if the defendant could, by such means, have prevented the injury, then it is liable therefor. And if the defect was so apparent that the plaintiff, by the

exercise of ordinary prudence and diligence, under the circumstances, ought to have observed it, and not gone upon the stay, then his negligence contributed to the result, and the defendant, however negligent, is not liable to him for the injury. So that it cannot be said upon the evidence that this is a clear case of accident. The most that can be said is that a jury might find it so, but probably would not. And upon the consideration of the defense of accident, the further question would arise, ought not the defendant to have provided a safer and better kind of scaffolding than it did? In my judgment there ought at least to have been a timber or plank like the one called the gang-plank, laid across from bent to bent in each of the three spaces between the posts, instead of only one and those few round poles or stays. This would only have given four feet in width of scaffold to 20 feet in width of operation. I know the witnesses said that this bridge was scaffolded, in this respect, in the same way that the other bridges were that were built on the road, but that does not settle the question by any means, of what is sufficient scaffolding; and, in as simple a matter as this, the court and jury can see for themselves that the scaffolding in this case was insufficient in both character and quantity.

The only ground upon which this motion can be allowed was correctly stated on the argument by the counsel for the defendant. It is this: The motion must be allowed, if upon the trial the court, at the request of the defendant, would have been bound to instruct the jury to find for it, for the reason that it appeared beyond a question, from the evidence, that the injury to the plaintiff is the result of accident and not the negligence of the defendant. But in my judgment the case is open to question on this point, and the court must have refused the instruction and submitted the question to the jury.

The defendant having chosen to put the case to the jury on the ground that the plaintiff was guilty of negligence in attempting to use the stay-lath as a scaffold, under any circumstances, and it not appearing certain that a different result would follow from a trial in which the defense would rely on the proposition that the injury to the plaintiff was the result of accident, the motion for a new trial is denied.